SASS & COHEN v. HOUSTON & TEXAS CENTRAL RAILWAY COMPANY ET AL.

Delivered December 11, 1897.

**1. Railway Company—Compressing Cotton.**

A railway company can not be held liable independently or joined with a compress company in an action by shipper of cotton over the railroad for damages for improperly compressing the cotton, although the rules of the State Railroad Commission made it the duty of the railroad company to have cotton compressed when requested by the shipper, where the shipper had a special contract with the compress company with regard to the compression that a specified person at the point of destination judge whether it was properly compressed.

2. Jurisdiction—Fraudulent Joinder.

Where a defendant who is not liable is fraudulently joined in the suit for the purpose of conferring jurisdiction, the court is warranted in sustaining a plea to the jurisdiction and dismissing the case as to the other defendant, sued out of its county.

APPEAL from Harris. Tried below before Hon. JOHN G. TOD.

*Jones & Garnett,* for appellant.

*Baker, Botts, Baker & Lovett* and *Frank Andrews,* for appellee Railway Company.

*Eugene J. Wilson* and *Louis J. Wilson,* for appellee the Ennis-Calvert Compress Company.

JAMES, CHIEF JUSTICE.—Appellants in October, November, and December, 1894, shipped cotton over the Houston & Texas Central Railway, consigned to Galveston, and in making each shipment plaintiffs stamped on the bill of lading that the cotton was to be compressed in transit. The rules established by the railroad commission of Texas at that time in force provided:

"1. A shipper desiring his cotton to be delivered at point of destination uncompressed shall give the railroad notice of such desire by inserting in his bills of lading the notation 'to go through uncompressed,' or other plain words of similar import, and it shall be the duty of the railroad company accepting such shipment to make delivery at destination accordingly.

"2. A shipper desiring his cotton delivered at destination compressed, shall, when no compress is in operation at shipping point, give the railroad company notice of such desire by inserting in his bills of lading the notation 'to be compressed in transit,' and it shall be the duty of the railroad company accepting the shipment to comply with such instructions, if there is an accessible compress at a station directly intermediate between shipping point and destination.

"3. Railroad companies shall assume the cost of compressing cotton which is to be delivered at destination compressed only on the following conditions: (1) Cotton shall be compressed at shipping point when an accessible compress is in operation at such point. (2) When no compress is in operation at shipping point, the cotton shall be compressed at a station directly intermediate between shipping point and destination, and distant seventy miles or more from such destination. Compresses being in operation at two or more stations directly intermediate between shipping point and destination, the compress nearest to shipping point shall be selected to compress such cotton. (3) The amount of the cost assumed by railroad companies shall not exceed 10 cents per 100 pounds out of rates that are not less than 45 cents per 100 pounds at Houston. Out of rates less than 45 cents per 100 pounds, the railroad companies shall assume only so much of the cost of compressing as will make the

aggregate of such cost and the current freight rate not to exceed 45 cents per 100 pounds."

Plaintiffs alleged among other things that Calvert, Texas, was the point on the line of said railway where, under the said rules and requirements, all of the cotton shipped was to be compressed. It appears from the evidence that the railway company delivered the cotton for compression to defendant, the Ennis-Calvert Compress Company; that it was compressed by said company and then returned to the railway company and carried to its destination without any default on the part of the railway company, unless it can be said to be responsible for the imperfect compression of the cotton. The action is based on the failure of the railway company to perform the duty alleged as devolving upon it by the law and said rules to have the cotton properly compressed, that is to say, "as required by usage and by the rules aforesaid." It appears that a large portion of the cotton was not compressed to a certain density that custom required (the rules of the Commission making no provision in this respect), and the cost of recompressing it at Galveston was the basis of the damages asked.

By a trial amendment plaintiffs alleged that before they would permit their cotton to be compressed by the said compress company at Calvert, they inquired of such company its rules, custom, and guaranty respecting its work, and received a reply that it would guarantee its work and make good all bad compressing, subject to the opinion of one H. Riesel, who was an expert in such matters, living in Galveston. That in reliance thereon they permitted and required said cotton compressed at Calvert. It was further alleged in this connection that both plaintiffs and the compress company knew that Riesel would condemn, as improperly compressed, any bale that was not compressed to a density of not less than $22\frac{1}{2}$ pounds to the cubic foot; that when the said cotton reached Galveston; Riesel did so condemn the work for that reason.

The testimony showed an express agreement between plaintiffs and said compress company, and the several facts substantially as alleged in the said amendment, and also showed that plaintiffs knew that the compress company did not usually compress cotton to a density of $22\frac{1}{2}$ pounds to the cubic foot.

The compress company interposed a plea to the jurisdiction of the District Court of Harris County, on the ground that it was entitled to be sued at its domicile (Robertson or Ellis County), and alleging among other things, that there was no liability on the part of the railroad company in respect to the subject matter; that if there existed any liability in respect thereto, this defendant was the party liable, and was in fact the real and sole defendant, and that the railway company had been fraudulently joined for the purpose of giving the said court jurisdiction over this defendant.

It is deemed unnecessary to refer to the action had on the demurrers, etc. The court upon hearing the testimony determined that no cause of action existed against the railway company, and rendered judgment in

its favor, but declined to pass on the merits of the case between plaintiffs and the compress company, and sustained its plea to jurisdiction.

It is claimed that plaintiffs should have had judgment against the railway company. In considering this question, we think it unnecessary to determine to what extent, if any, the railway company was by said rules of the commission required to see to the manner of compressing the cotton. The peculiar facts of this case, in our opinion, were sufficient to relieve the company from exercising any such supervision, assuming that such was its duty ordinarily. It is shown that the plaintiff had a special contract with the compress company with regard to the compression of this cotton, providing the manner in which it should be compressed, and also the manner in which and by whom the proper or improper compression by the compress company was to be arrived at, viz., by the inspection and judgment of Riesel, at the point of destination. It was the agreement of plaintiff and the compress company that the latter should receive the cotton and compress it; that upon its reaching Galveston, Riesel, not the railway company at Calvert, was to pass on the question whether or not the compress company had complied with the agreement. The contract showed that it was not contemplated that the railway company should take any part in the compression of cotton. No complaint is made of the railway company's conduct in any other respect; and we conclude that the District Court was correct in rendering judgment in its favor.

The court, in sustaining the plea to the jurisdiction, must be considered to have found it to be a fact that the joinder of the railway company was fraudulently made with a view of conferring upon the court jurisdiction of the compress company, and therefore its action in this regard must be held warrantable.

The judgment is affirmed.

*Affirmed.*